## MARY ALICE HANKS

### *v.*

## DAVID HANKS.

*Opinion filed October 24, 1905.*

ACCOUNTING—*when amount of decree in accounting will stand on appeal.* The amount fixed in a decree in a proceeding by a husband against his wife for an accounting will not be disturbed by the Supreme Court upon the ground that the trial court should have treated the transaction involved as an investment of defendant's money rather than as a simple loan, where the amount decreed is as favorable to the appellant as the evidence would warrant in either view of the case, and the appellee makes no complaint.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. E. P. VAIL, Judge, presiding.

This is a bill, filed in the circuit court of Macon county on the 9th day of December, 1902, by the appellee, David Hanks, against the appellant, Mary Alice Hanks, his wife,

for an accounting. Answer was filed by the defendant, denying the material allegations of the bill, to which a replication was filed. The cause being at issue was referred to a master in chancery to take proofs, and report his conclusions. The master took testimony, and made a report, finding that the appellant was not indebted to her husband, and recommending that the bill be dismissed. The cause was heard before the chancellor upon exceptions to this report. The exceptions were sustained, and on May 13, 1903, the circuit court entered a decree, finding that the appellant was indebted to the appellee, her husband, in the sum of $2395.00, and ordering that she convey certain property, to which she held the title in the city of Decatur valued at $2000.00, to her husband within thirty days, and pay to him $395.00, in case of her failure to pay the whole amount of $2395.00. By the decree it was ordered that the parties each pay half the costs, and that appellee have execution after thirty days from the filing of the decree against appellant for $2395.00, and interest from date thereof. An appeal was taken from this decree to the Appellate Court. The Appellate Court has rendered a judgment affirming the decree, and the present appeal is prosecuted from such judgment of affirmance.

MILLS BROS., and JAMES J. FINN, for appellant.

C. C. LEFORGEE, and MARSHALL C. GRIFFIN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellee and the appellant were married on January 21, 1878, she being then about seventeen years of age. She was then living with her mother and step-father, her own father having died before that time. At the time of her marriage the appellant had $1925.00 in cash, which she had in-

herited from her father's estate, and which was then in the hands of her step-father, whose name was Petzer. Appellant also had a horse given to her by her step-father valued at $100.00, which, added to the $1925.00, made $2025.00. There was another horse owned by her, and some time after the marriage the two horses were sold by the appellee. For some time after their marriage appellee and appellant lived on a farm near Argenta, Illinois, belonging to the appellee's father. In 1879 appellee purchased a farm near Blue Mound, Illinois, for the sum of $2600.00. There was a mortgage upon the farm for $600.00, which appellee assumed, and $2000.00 was paid by him in cash. According to the testimony of the appellee, this $2000.00 was made up of the $1925.00 belonging to appellant, and $75.00 belonging to appellee. But there is evidence, tending to show that the whole of the $2000.00 invested in this farm belonged to appellant. The Blue Mound farm was purchased from a man named Piper, who conveyed the farm to appellee by a deed dated August 9, 1879. Appellee and appellant lived upon this Blue Mound farm until 1885, at which time appellee sold the farm to one Walley for $3600.00. Walley assumed the payment of a mortgage then on the farm of $600.00, and paid $3000.00 in cash to appellee. About this time appellee's father died, leaving a farm of over 400 acres, in which appellee, as one of the five heirs of his father, had an interest of 80 acres. Appellee and his brother, John W. Hanks, bought out the other heirs, and assumed a mortgage of $9700.00 upon the property. By contract between appellee and his brother, John, appellee took 160 acres, and assumed the payment of one-half of the mortgage for $9700.00, to-wit, $4850.00. The farm of 400 acres, thus left by appellee's father, was worth $50.00 an acre, so that appellee's interest after deducting the $4850.00 was worth about $3000.00. In order to make this purchase of 160 acres appellee put in the $3000.00 for which the Blue Mound farm had been sold, and his own 80 acres, worth $3000.00, mak-

ing $6000.00, and assumed the mortgage of $4850.00. He reduced this mortgage to $3150.00 by payments, amounting to $1700.00, and subsequently paid it off by making a new mortgage to an insurance company for $3500.00. In the summer of 1900 appellee sold this farm of 160 acres, known as the Argenta farm, to one Greenfield for $11,500.00, or $11,520.00. Greenfield assumed the mortgage of $3500.00, and paid in cash the sum of $8000.00. The difficulty between appellee and appellant, which resulted in her leaving appellee and going to the home of her step-father, arose out of the question as to how the proceeds of this sale should be disposed of. Appellant declined to sign the deed, and insisted that $5000.00 of the purchase money should be paid to her. The money was deposited in a national bank, and the deed was left there, and finally the deed was delivered to Greenfield, and the $5000.00 was paid over to the appellant. She claims that this $5000.00 was her own individual money, and that her husband, the appellee, consented that it should be paid to her in consideration of her signing the deed to Greenfield. The appellee, on the other hand, contends that it was agreed between them that she was to hold the $5000.00, until he found a chance to invest it by the purchase of another farm. Appellee's contention is, that, prior thereto, they had invested their money in farm land, and it was understood that in the same way this new sum of $5000.00 was to be invested.

The evidence shows that in 1888, according to the testimony of the appellee, but in 1889 according to the testimony of appellant, the appellee purchased a lot in the city of Decatur, and had the title to the same conveyed to his wife, the appellant. The lot was estimated to be worth $1500.00, and appellee placed improvements on it to the value of $500.00, making it worth $2000.00. The contention of appellee is, that this lot and its improvements were given by him to his wife in part payment of what he owed her on account of his use of her separate funds inherited from her father.

The evidence tends strongly to show that, when appellee took the sum of $2000.00 belonging to his wife in 1879, and with it purchased the Blue Mound farm, the transaction amounted to a loan of $2000.00 by appellant to appellee. They lived for years upon the Blue Mound farm, and the rents and profits were used for their support and the support of their children. The testimony shows that they had two children, and one of them, a son who is a witness in this case, was some twenty-two or twenty-three years of age at the time of the hearing of the cause.

It is claimed by counsel for appellant that she did not lend her money to her husband, in which case she would only be entitled to legal interest upon the amount of the loan, but that she gave it to him to invest for her, and that she is entitled to such increase as resulted from the investments. Upon this theory appellant claims that the $3000.00 realized from the sale of the Blue Mound farm belonged entirely to her, and that, when the Argenta farm of 160 acres was purchased, there was an investment therein of $3000.00 of her money and $3000.00 of her husband's money, and that, therefore, she was entitled to one-half of the profits derived from the investment in the 160-acre farm.

The court below held that the appellant had received $2000.00 by the conveyance to her of the house and lot in Decatur, and had received $5000.00 in money, part of the proceeds of the sale of the 160-acre farm, making $7000.00 in all; and that she was entitled to the sum of $4605.00 as her own money, which, deducted from the sum of $7000.00, leaves $2395.00, the amount which the decree ordered her to pay to the appellee. After a careful examination of the record, we think that the conclusion, thus reached by the circuit court and affirmed by the Appellate Court, is correct.

It makes little difference whether the transaction be regarded as a loan, or as an investment. If it be regarded as a loan, then in August, 1879, appellee received $2025.00 belonging to his wife, made up of $1925.00 inherited from

her father's estate and $100.00, the value of a horse received by her from her step-father. Interest on $2025.00 from August, 1879, to the spring of 1901, when the 160-acre farm was sold, at the rate of six per cent per annum, would amount to something ·over $2600.00, making the whole amount of principal then due about $4605.00, which amount, taken from the $7000.00 received by appellant, would leave $2395.00, the amount named in the decree. This is the interpretation placed by counsel for appellant upon the decree of the lower court, for they say in their brief, that the trial court "proceeded to take an accounting between the parties upon the theory, that ·the moneys that were advanced by appellant in the original purchase of the Blue Mound farm, was a simple loan, for which with interest the appellee was indebted to appellant, amounting to the sum of $4605.00, and then charged her with the $2000.00 invested in the Decatur property, together with the $5000.00 received at the sale of the Argenta farm, making a total of $7000.00 received by her, and leaving appellant in debt to appellee the amount of the difference, being $2395.00, which was decreed that she should pay to him." This view and this mode of calculation were exceedingly favorable to the appellant, for the reason that she received the Decatur house and lot according to her own testimony in 1889. If interest be calculated on the sum of $2025.00 from 1879 to 1889, a period of ten years, and the $2000.00 be deducted at that date, and interest calculated on the balance up to the spring of 1901, when the farm of 160 acres was sold and appellant received the $5000.00, the amount of principal and interest due her would be largely less than $4605.00.

But suppose it be true that appellant is entitled to one-half of the profits of the investment of the joint moneys of herself and her husband. There is evidence, tending to show that $3000.00 of her money and $3000.00 of his money went towards the purchase of the farm of 160 acres. When this farm was sold there was realized in cash the sum of

$8000.00, the purchaser assuming the mortgage of $3500.00. Upon the theory of investment, appellant would be entitled to half of the $8000.00, that is to say, to $4000.00. She had received $2000.00 by the conveyance to her of the Decatur house and lot and $5000.00 in money. As she was only entitled under this theory to $4000.00, one-half of the $8000.00, she was indebted to her husband for the difference between $7000.00 and $4000.00, which would be $3000.00, whereas the court only ordered her to pay $2395.00. But there is testimony, tending to show that her husband sold the two horses belonging to her for $300.00, and that in 1896 she received from her mother's estate $305.00, making $605.00. The court held that she was entitled to receive this $605.00 from her husband, which, added to the $4000.00, one-half of the investment, makes $4605.00, the amount actually allowed her.

In any view of the case therefore, whether the transaction be regarded as a loan or as an investment, appellant was awarded all that she was entitled to by the decree of the court. As is said by the Appellate Court in their opinion deciding this case: "The bill is for an accounting pure and simple, and not to declare a resulting trust in defendant, (appellant) in favor of complainant, (appellee,) as to the house and lot in Decatur, and the defendant filed no cross-bill to declare a resulting trust in her favor as to the Blue Mound or Argenta farms, as might be inferred from the authorities cited and arguments advanced by counsel for the respective parties."

We find no error in the record, and accordingly the judgment of the Appellate Court affirming the decree of the circuit court, is affirmed.                    *Judgment affirmed.*